Slip Op. 11-132

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **FURNITURE BRANDS INTERNATIONAL, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendants,<br><br>and<br><br>**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**<br><br>Defendant-Intervenors. | **Before:** Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge<br><br>**Court No. 07-00026** |

### OPINION

[Denying plaintiff's motion to amend the complaint and dismissing the complaint for failure to state a claim upon which relief can be granted]

Dated: October 20, 2011

*David W. DeBruin* and *Matthew E. Price*, Jenner & Block LLP, of Washington, DC, for plaintiff.

*Jessica R. Toplin*, *David S. Silverbrand*, and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director. Of counsel on the briefs was *Andrew G. Jones*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant United States International Trade Commission.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

*Joseph W. Dorn* and *Jeffrey M. Telep*, King & Spalding LLP, of Washington, DC, for defendant-intervenors.  With them on the briefs were *Steven R. Keener* and *Taryn K. Williams*. Of counsel on the briefs was Richard H. Fallon, of Cambridge, MA.

Stanceu, Judge: This case arises from decisions of the U.S. International Trade

Commission ("ITC" or the "Commission") to deny plaintiff Furniture Brands International, Inc.

("Furniture Brands") status as an "affected domestic producer" ("ADP") under the Continued

Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), Pub. L. No.

106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75 (codified at 19 U.S.C. § 1675c (2000)),[1]

*repealed by* Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8,

2006; effective Oct. 1, 2007).  ADP status potentially would have qualified Furniture Brands for

distributions of antidumping duties collected under an antidumping duty order on imports of

wooden bedroom furniture from the People's Republic of China ("China" or the "PRC").  *Notice*

*of Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order:*

*Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4,

2005) ("*Antidumping Duty Order*").  Plaintiff brings a constitutional challenge to the CDSOA

and to the ITC's decisions under the CDSOA denying it ADP status for fiscal years 2006

through 2008.  Second Supplemental Compl. ¶¶ 53-56 (deemed filed Oct. 8, 2008), ECF No. 46.

---

[1] Citations are to the codified version of the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000).  All other citations to the United States Code are to the 2006 edition.

Plaintiff also challenges the refusal of U.S. Customs and Border Protection ("Customs") to pay it

CDSOA distributions.  *Id.* ¶¶ 57-59.

Before the court are four dispositive motions.  Defendant-intervenors American Furniture

Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. and

defendant Customs move for judgment on the pleadings under USCIT Rule 12(c).  Def.-

Intervenors' Mot. for J. on the Pleadings (Feb. 23, 2011), ECF No. 72 ("Def.-intervenor's

Mot."); Defs. the United States & U.S. Customs and Border Protection's Mot. for J. on the

Pleadings (May 4, 2011), ECF No. 95 ("Customs' Mot.").  Defendant ITC moves under USCIT

Rule 12(b)(5) to dismiss for failure to state a claim upon which relief can be granted.  Def. U.S.

Int'l Trade Comm'n's Mot. to Dismiss for Failure to State a Claim (May 2, 2011), ECF No. 90

("ITC's Mot.").  Plaintiff moves to dismiss its own complaint under USCIT Rule 12(b)(1),

asserting a lack of subject matter jurisdiction, and moves in the alternative to amend that

complaint to add two new claims.  Mot. to Dismiss for Lack of Subject Matter Jurisdiction, or, in

the Alternative, for Leave to Amend the Compl. (Mar. 29, 2011), ECF No. 84 ("Pl.'s Mot.").

The court determines that it has subject matter jurisdiction over this action and that no

relief can be granted on the complaint.  The court denies as futile plaintiff's motion to amend the

complaint, and concludes that this action should be dismissed.

### I. BACKGROUND

In 2005, Commerce issued an antidumping duty order on imports of wooden bedroom

furniture from China.  *Antidumping Duty Order*, 70 Fed. Reg. at 329.  During proceedings before

the ITC to determine whether such imports were causing or threatening to cause material injury

to the domestic industry, Furniture Brands responded to the ITC's questionnaires, opposing the

issuance of an antidumping duty order. *U.S. Producers' Questionnaire - Furniture Brands* 2

(Sept. 3, 2004) (ITC Admin. R. Doc. No. 5), ECF No. 17; Second Supplemental Compl. ¶ 27.

The ITC did not list Furniture Brands as an ADP with respect to this order for fiscal years 2006,

2007, or 2008. *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic*

*Producers*, 71 Fed. Reg. 31,336, 31,375-76 (June 1, 2006); *Distribution of Continued Dumping*

*& Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23 (May 29,

2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73

Fed. Reg. 31,196, 31,236-37 (May 30, 2008).

     In January 2007, plaintiff commenced this action to challenge the government's failure to

provide it CDSOA distributions for fiscal year 2006. Compl. (Jan. 23, 2007), ECF No. 4.

Customs and the ITC filed their answers to the complaint on March 28 and March 29, 2007,

respectively. Answer (Mar. 28, 2007), ECF. No. 20 (answer of Customs); Answer (Mar. 28,

2007), ECF No. 21 (answer of the ITC). Defendant-intervenors filed their answer on April 11,

2007. Answer (Apr. 11, 2007), ECF No. 28. The court then stayed this action pending a final

resolution of other litigation raising the same or similar issues.[2] Order (June 5, 2007), ECF

No. 39. On December 12, 2007, the court lifted this stay for the limited purpose of allowing an

amendment to the complaint to include a challenge to the denial of CDSOA distributions to

plaintiff for fiscal year 2007. Order (Dec. 12, 2007), ECF No. 44; First Amended Compl.

(deemed filed Oct. 18, 2007), ECF No. 45. On December 11, 2008, the court again lifted the

stay for the limited purpose of allowing amendment of the complaint, this time to include a

---

    [2] The court's order stayed the action "until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States International Trade Commission*, Consol. Court No. 06-00290, that is, when all appeals have been exhausted." Order (June 5, 2007), ECF No. 39.

challenge to denial of CDSOA distributions to plaintiff for fiscal year 2008. Order (Dec. 11,

2008), ECF No. 50; Second Supplemental Compl.

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of

Appeals") in *SKF USA Inc. v. United States*, 556 F.3d 1337 (2009) ("*SKF USA II*"), *cert. denied*,

130 S. Ct. 3273 (2010), which addressed legal questions that are also present in this case, the

court ordered plaintiff to show cause why this case should not be dismissed. Order (Jan. 3,

2011), ECF No. 57. After plaintiff responded to the court's order, the court lifted its stay on this

action for all purposes. Order (Feb. 9, 2011), ECF No. 66; Pl.'s Br. in Resp. to the Ct.'s Order to

Show Cause (Jan. 28, 2011), ECF No. 63. Defendant-intervenors filed their motion for judgment

on the pleadings on February 23, 2011. Def.-intervenor's Mot. While briefing on this motion

was pending, plaintiff filed its motion to dismiss pursuant to USCIT Rule 12(b)(1) or for leave to

amend the complaint. Pl.'s Mot. Defendants Customs and ITC subsequently filed their

dispositive motions. ITC's Mot.; Customs' Mot. Briefing on all dispositive motions is now

complete.

During briefing on the various dispositive motions, plaintiff filed a letter notifying the

court of a recent decision by the U.S. Supreme Court, which decision, according to plaintiff,

"carries great significance for the pending motions to dismiss filed by the Defendants . . . and the

pending motion for judgment on the pleadings filed by the Intervenors." *Letter from Pl. to the*

*Ct.* 1 (July 8, 2011), ECF No. 105 ("*Pl.'s Additional Authority Letter*") (citing *Sorrell v. IMS*

*Health Inc.*, 131 S. Ct. 2653 (2011)). Defendant-intervenors filed a reply to this letter, and both

defendants responded to this letter in their reply briefs. Def.-intervenor's Resp. to Pl.'s

Supplemental Authority Letter (July 22, 2011), ECF No. 109; Defs. United States & U.S.

Customs & Border Protection's Reply in Supp. of their Mot. to Dismiss For Failure to State a

Claim upon Which Relief can be Granted 4-5 n.3 (July 14, 2011), ECF No. 107; Def. U.S. Int'l

Trade Comm'n's Reply to Pl.'s Br. in Opp'n to Mot. to Dismiss for Failure to State a Claim

11-13 (July 14, 2011), ECF No. 108.   Subsequently, plaintiff filed another notice, this time

informing the court of a decision reached by the U.S. District Court for the District of Columbia

in a parallel action, in which plaintiff brought essentially the same claims it brings in this action,

and requesting that the court transfer this action to that district court if subject matter jurisdiction

is found lacking here.[3]   Pl.'s Notice of Supplemental Authority & Clarification of Relief Sought

(Aug. 16, 2011), ECF No. 110 (citing *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*,

No. 11-00202, 2011 WL 3562890 (D.D.C. Aug. 15, 2011)).   Only Customs replied to this second

letter.   Defs. United States & U.S. Customs & Border Protection's Resp. to Pl.'s Notice of

Supplemental Authority & Clarification of Relief Sought (Aug. 30, 2011), ECF No. 111.

Finally, plaintiff replied to Customs' response.   Pl.'s Resp. to Customs' Filing Regarding Pl.'s

Notice of Supplemental Authority & Clarification of Relief Sought (Sept. 6, 2011), ECF

No. 112.[4]

---

[3] The district court dismissed plaintiff's complaint without prejudice so that this Court, the court of first filing, could first determine which court had subject matter jurisdiction to resolve the dispute. *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, No. 11-00202, 2011 WL 3562890, at *6 (D.D.C. Aug. 15, 2011).

[4] U.S. Customs and Border Protection ("Customs") has not made any distributions affecting this case and indicates that it will refrain from doing so until January 31, 2012 at the earliest. Def. U.S. Customs & Border Protection's Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 75.

## II. DISCUSSION

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the

distribution of funds from assessed antidumping and countervailing duties to persons with ADP

status, which is limited to petitioners, and interested parties in support of petitions, with respect

to which antidumping duty and countervailing duty orders are entered.[5]  19 U.S.C.

§ 1675c(a)-(d).  The CDSOA directed the ITC to forward to Customs, within sixty days after an

antidumping or countervailing duty order is issued, lists of "petitioners and persons with respect

to each order and finding and a list of persons that indicate support of the petition by letter or

through questionnaire response."[6]  *Id.* § 1675c(d)(1).  The CDSOA directed Customs to publish

in the Federal Register lists of ADPs potentially eligible for distributions of a "continuing

dumping and subsidy offset" that are based on the lists obtained from the Commission.  *Id.*

§ 1675c(d)(2).  The CDSOA also directed Customs to segregate antidumping and countervailing

duties according to the relevant antidumping or countervailing duty order, to maintain these

duties in special accounts, and to distribute to an ADP annually, as reimbursement for incurred

---

[5] The CDSOA provided that:
The term "affected domestic producer" means any manufacturer, producer, farmer, rancher or worker representative (including associations of such persons) that–
(A) was a petitioner or interested party in support of the petition with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered, and
(B) remains in operation.
19 U.S.C. § 1675c(b)(1).

[6] Additionally, the CDSOA directed the U.S. International Trade Commission ("ITC") to forward to Customs a list identifying affected domestic producers "within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999 . . . ." 19 U.S.C. § 1675c(d)(1).  The antidumping duty order which is at issue in this case, on imports of wooden bedroom furniture from the People's Republic of China, was not in effect on that date.

qualifying expenditures, a ratable share of the funds (including all interest earned) from duties

assessed on a specific unfairly traded product that were received in the preceding fiscal year. *Id.*

§ 1675c(d)(3), (e).[7]

At issue in this case is the "petition support requirement" that the CDSOA imposes as a

condition for obtaining distributions. *Id.* § 1675c(b)(1), (d).  In challenging the petition support

requirement on First and Fifth Amendment grounds, plaintiff relies on two decisions of the Court

of International Trade, *SKF USA Inc. v. United States*, 30 CIT 1433, 451 F. Supp. 2d 1355

(2006) ("*SKF USA I*") (holding the petition support requirement to violate the equal protection

requirement of the Fifth Amendment Due Process Clause) and *PS Chez Sidney, L.L.C. v. U.S.*

*International Trade Commission*, 30 CIT 858, 442 F. Supp. 2d 1329 (2006) ("*PS Chez Sidney I*")

(holding the petition support requirement to violate First Amendment freedom of expression

provisions).  Second Supplemental Compl. ¶ 55.  After plaintiff brought this action, the Court of

Appeals overturned both decisions, holding the CDSOA constitutionally permissible in denying

ADP status to a plaintiff that did not indicate support of the petition.  *SKF USA II*, 556 F.3d

at 1359-60; *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, Nos. 2008-1526, 2008-1527,

2008-1534, 2008-1555, 2010 WL 4365784, at *1-2 (Fed. Cir. Oct. 28, 2010) ("*PS Chez*

---

[7] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ."  Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

*Sidney II*") (summarily reversing the holding that the petition support requirement was

unconstitutional).

Despite the decisions of the Court of Appeals, plaintiff maintains its constitutional

claims, arguing that *SKF USA II* does not foreclose a constitutional challenge to the CDSOA

based on facts that plaintiff alleges to differ materially from those on which *SKF USA II* was

decided. Pl.'s Mem. in Opp'n to Def.-Intervenors' Mot. for J. on the Pleadings 4-5 (Mar. 29,

2011), ECF No. 85. Plaintiff also seeks to amend its complaint to add two new claims, both of

which it grounds in alleged facts under which plaintiff maintains that defendants, in denying

plaintiff ADP status and CDSOA distributions, acted contrary to the CDSOA as interpreted by

*SKF USA II.* Proposed Third Amended Compl. ¶¶ 60-67 (Mar. 29, 2011), ECF No. 84. Plaintiff

moves to amend only in the alternative, preferring that the court dismiss this action for lack of

subject matter jurisdiction. Pl.'s Mot. 1-2.

### A. The Court Has Jurisdiction Over Plaintiff's Complaint

Although invoking subject matter jurisdiction under section 201 of the Customs Courts

Act of 1980 ("Customs Courts Act"), 28 U.S.C. § 1581(i), in bringing this action, plaintiff now

moves for dismissal according to USCIT Rule 12(b)(1), arguing that § 1581(i) does not provide

jurisdiction over this case. Pl.'s Mot. 1; *see* Second Supplemental Compl. ¶ 4. A party may

invoke Rule 12(b) only in asserting a defense to a claim brought against it. *See* USCIT R. 12(b).

The rule is not available to a party seeking to assert a would-be "defense" to its own claim for

relief. Therefore, the court may not dismiss this action under Rule 12(b) by granting plaintiff's

motion to dismiss. Nor is the court able to construe plaintiff's motion as a motion made under

USCIT Rule 41(a)(2) for voluntary dismissal without prejudice. The court finds nothing in

plaintiff's motion indicating an intent to dismiss this action voluntarily; the motion seeks instead

a dismissal that is involuntary.  Nevertheless, because the court may not allow any action to

proceed without first ensuring that subject matter jurisdiction exists over that action, the court

considers, *sua sponte*, the jurisdictional question plaintiff has raised.[8]

Under paragraph (2) of 28 U.S.C. § 1581(i), the court is granted exclusive jurisdiction of

"any civil action commenced against the United States . . . that arises out of any law of the

United States providing for . . . tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue."  Although duties "on the importation

---

[8] Declining jurisdiction in this case would be inconsistent with implicit findings of subject matter jurisdiction in every prior case in which the Court of International Trade or the U.S. Court of Appeals for the Federal Circuit has reached the merits of claims arising out of the CDSOA.  *See PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, Nos. 2008-1526, 2008-1527, 2008-1534, 2008-1555, 2010 WL 4365784 (Fed. Cir. Oct. 28, 2010) ("*PS Chez Sidney II*"); *SKF USA Inc. v. United States*, 556 F.3d 1337 (2009), *cert. denied*, 130 S. Ct. 3273 (2010); *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319 (2008); *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353 (Fed. Cir. 2006); *Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*, 374 F.3d 1087 (Fed. Cir. 2004); *Five Rivers Electr. Innovation, LLC v. United States*, 35 CIT __, 755 F. Supp. 2d 1349 (2011); *Sioux Honey Ass'n v. United States*, 34 CIT __, 722 F. Supp. 2d 1342 (2010); *Thyssenkrupp Mexinox S.A. de C.V. v. United States*, 33 CIT __, 662 F. Supp. 2d 1356 (2009); *Southern Shrimp Alliance v. United States*, 33 CIT __, 617 F. Supp. 2d 1334 (2009); *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 30 CIT 858, 442 F. Supp. 2d 1329 (2006), *rev'd on other grounds PS Chez Sidney II*, 2010 WL 4365784, at *1-2; *SKF USA Inc. v. United States*, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006), *rev'd on other grounds* 556 F.3d 1337; *Canadian Lumber Trade Alliance v. United States*, 30 CIT 391, 425 F. Supp. 2d 1321 (2006), *aff'd in part* 517 F.3d 1319; *Dixon Ticonderoga Co. v. U.S. Customs & Border Protection*, 29 CIT 406, 366 F. Supp. 2d 1352 (2005), *rev'd on other grounds* 468 F.3d 1353; *Candle Artisans v. U.S. Int'l Trade Comm'n*, 29 CIT 145, 362 F. Supp. 2d 1352 (2005); *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 27 CIT 1541, 285 F. Supp. 2d 1371 (2003), *aff'd* 400 F.3d 1352 (Fed. Cir. 2005); *Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*, 27 CIT 560, 259 F. Supp. 2d 1349 (2003), *aff'd* 374 F.3d 1087.  However, because none of the opinions in these cases discusses the specific jurisdictional argument plaintiff raises, the court analyzes the jurisdictional question anew.  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 307 (1962) ("While we are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed sub silentio, neither should we disregard the implications of an exercise of judicial authority assumed to be proper" in previous cases.) (citation omitted).

of merchandise for reasons other than the raising of revenue" include, *inter alia*, antidumping

and countervailing duties, *see, e.g., Trustees in Bankruptcy of North American Rubber Thread

Co. v. United States,* 593 F.3d 1346, 1353 (Fed. Cir. 2010), the instant action is not properly

construed as arising broadly out of the antidumping and countervailing duty statute, Title VII of

the Tariff Act, which the CDSOA amended. *See Orleans Int'l, Inc. v. United States*, 334 F.3d

1375, 1379 (Fed. Cir. 2003).  Instead, this case arises out of the CDSOA.[9]  The CDSOA does not

provide for antidumping and countervailing duties, which are assessed under other provisions of

Title VII.

Paragraph (4) of 28 U.S.C. § 1581(i) provides subject matter jurisdiction of any civil

action commenced against the United States that arises out of a law of the United States

providing for "administration and enforcement with respect to the matters referred to" in other

provisions of § 1581, including paragraph (2) of subsection 1581(i).  The CDSOA is not an

enforcement statute.  Therefore, the jurisdictional question presented is whether the CDSOA is a

law "providing for . . . administration . . . with respect to" antidumping and countervailing

duties.  28 U.S.C. § 1581(i)(4).  We conclude that it is.

The CDSOA directs Customs to conduct an array of functions, including the depositing,

maintaining, allocating, and distributing of antidumping and countervailing duties; specifically,

Customs is to maintain the deposited antidumping and countervailing duties by order and to

---

[9] Plaintiff argues that this case arises out of only the provision in the CDSOA establishing
the petition support requirement. Pl.'s Reply Br. in Supp. of its Mot. to Dismiss for Lack of
Subject Matter Jurisdiction, Or in the Alternative, for Leave to Amend the Compl. 2-3 (May 23,
2011), ECF No. 98 ("Pl.'s Reply") (arguing that the claim arises only from 19 U.S.C.
§ 1675c(b)(1), (d)(1), (d)(3)). This argument is meritless. The petition support requirement
provision is integral in structure and purpose with the other provisions of the CDSOA, the
provisions of which collectively constitute a "law" within the meaning of 28 U.S.C. § 1581(i).

allocate and distribute these duties to ADPs annually as reimbursement for qualifying

expenditures.  *See* 19 U.S.C. § 1675c(d)(3), (e).  These functions as a whole satisfy definitions of

the term "administration."  That term refers to, "[i]n public law, the practical management and

direction of the executive department and its agencies."  Black's Law Dictionary 49 (9th ed.

2009).[10]  The term is also defined as "[t]he management of public affairs; the conduct or carrying

on of the details of government."  Oxford English Dictionary vol. 1, 163 (2d ed. 1989).

    The legislative history of the Customs Courts Act supports the court's exercise of

jurisdiction over this case.  According to the associated Report of the House Judiciary

Committee ("House Report"), an objective of the provisions defining the jurisdiction of the new

Court of International Trade was to resolve the then-existing problem of litigants mistakenly

filing international trade cases before district courts due to the difficulty in "determin[ing] in

advance whether or not a particular case falls within the jurisdictional scheme of the Customs

Court . . . ."  H.R. Rep. No. 96-1235, at 19 (1980), *reprinted at* 1980 U.S.C.C.A.N. 3729,

3730-31.  As the House Report explains, the U.S. Customs Court had been granted jurisdiction

"over civil actions commenced to review those antidumping and countervailing duty

determinations listed in section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a]" by Title X

of the Trade Agreements Act of 1979, jurisdiction that the Customs Courts Act restated in

28 U.S.C. § 1581(c) and vested in the newly-created court.  *Id.* at 45, *reprinted at* 1980

U.S.C.C.A.N. at 3756.  As the language of § 1581(i)(2) and (4) demonstrates, Congress intended

---

[10] Analogously, in the context of decedents' estates, "administration" of an estate involves "realizing the movable assets and paying out of them any debts and other claims against the estate.  It also involves the division and distribution of what remains."  Black's Law Dictionary 49 (9th ed. 2009).

to grant the new court jurisdiction over some actions arising out of the antidumping and

countervailing duty laws that did not fall within the jurisdictional grant in § 1581(c).  As stated

in the House Report, new subsection § 1581(i) "makes it clear that all suits of the type specified

are properly commenced only in the Court of International Trade."  *Id.* at 47, *reprinted at* 1980

U.S.C.C.A.N. at 3759.  Plaintiff's view of the scope of § 1581(i) jurisdiction would place some

suits in the Court of International Trade and others in the district courts, depending on whether

the law in question satisfies plaintiff's narrow construction of the words "administration . . . with

respect to" antidumping and countervailing duties.  Acceptance of plaintiff's limited construction

would frustrate rather than further the congressional purpose.

Plaintiff argues that jurisdiction over this action is lacking because the CDSOA does not

"provide for administration or enforcement with respect to duties" but instead "provides for the

*distribution of funds* collected from duties imposed, administered, and enforced by other

statutory provisions."  Mem. of Law in Supp. of Pl.'s Mot. to Dismiss for Lack of Subject Matter

Jurisdiction, Or, in the Alternative, for Leave to Amend the Compl. 2-3 (Mar. 29, 2011), ECF

No. 84) ("Pl.'s Mem.").  Plaintiff's bright-line demarcation between collected antidumping and

countervailing duties and "funds" is an artificial one that lacks support in the language Congress

chose for the CDSOA, which uses the term "duties" interchangeably with the term "funds."  *See*

19 U.S.C. § 1675c(a) ("Duties assessed pursuant to . . . an antidumping duty order . . . shall be

distributed on an annual basis"); *id.* § 1675c(c) ("distribution shall be made . . . from duties

assessed during the preceding fiscal year."); *id.* § 1675c(d)(3) ("The Commissioner shall

distribute all funds . . . from assessed duties received in the preceding fiscal year"); *id.*

§ 1675c(e)(2) ("The Commissioner shall deposit into the special accounts, all antidumping or

countervailing duties . . . that are assessed after the effective date of this section"). The court

must presume that in using the term "duties" in the CDSOA, Congress intended the term to have

the meaning the term had in the Customs Courts Act. *See Smith v. City of Jackson*, 544 U.S.

228, 233 (2005). And whether or not plaintiff is correct in opining that distribution is not

administration,[11] plaintiff's argument overlooks the broader administrative scheme the CDSOA

established, which extends beyond distribution and requires Customs to perform various

functions that together constitute "administration . . . with respect to" collected antidumping and

countervailing duties. 28 U.S.C. § 1581(i)(4).

Plaintiff cites a decision of the U.S. Court of Appeals for the District of Columbia

Circuit, *International Labor Rights, Education, & Research Fund v. Bush*, 954 F.2d 745 (D.C.

Cir. 1992) (per curiam), in arguing that jurisdiction is lacking here. Pl.'s Mem. 3-4. That case

involved an action brought by human rights organizations and labor unions to compel Executive

Branch enforcement of a provision in the Generalized System of Preferences ("GSP") statute,

19 U.S.C. § 2462(b)(7), under which the President is to deny GSP beneficiary status to any

country that has not taken or is not taking steps to afford workers internationally-recognized

worker rights. Plaintiff argues that the Court of Appeals for the D.C. Circuit held that the case

"should be heard in the district court, rather than in the Court of International Trade." Pl.'s

---

[11] In support of this argument, plaintiff cites Harbor Maintenance Tax provisions in the
Internal Revenue Code that address separately administrative and spending matters, Mem. of
Law in Supp. of Pl.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Or, in the
Alternative, for Leave to Amend the Compl. 6-7 (Mar. 29, 2011), ECF No. 84 (citing 26 U.S.C.
§§ 4462(f)(3), 9505), and cites subtitle III of the Tariff Act, which is entitled "Administrative
Provisions," but, according to plaintiff, "says nothing about the distribution of the proceeds,"
Pl.'s Reply 8. These tangential arguments fail to address directly the question of the intended
meaning of the term "administration" as used in the Customs Courts Act of 1980, 28 U.S.C.
§ 1581(i)(4).

Mem. 3. *International Labor Rights* is neither precedent binding on this court nor on point, and

plaintiff's characterization of the holding is incorrect.  The only holding in the case is that the

district court was correct in dismissing the action.  Of the two judges in the majority, each of

whom filed a separate opinion concurring in the court's per curiam affirmance of dismissal, one

concluded that exclusive jurisdiction was in the Court of International Trade under 28 U.S.C.

§ 1581(i)(2) on the reasoning that the GSP statute is a law providing for duties, 954 F.2d

at 746-48 (Henderson, J., concurring) and the other, although finding subject matter jurisdiction

in the district court, concluded that all plaintiffs lacked standing, *id.* at 748-52 (Sentelle, J.,

concurring).

Upon considering the plain language of 28 U.S.C. § 1581(i)(4), the relevant legislative

history of the Customs Courts Act, and plaintiff's arguments, we conclude that § 1581(i)(4)

provides subject matter jurisdiction over this case.

### B.  Plaintiff Fails to State a Claim upon which Relief Can Be Granted

Plaintiff brings two claims in its Second Supplemental Complaint.  Both are premised on

the contention that the petition support requirement in the CDSOA is constitutionally

impermissible.  Plaintiff claims, first, that the ITC, in applying that requirement to deny

Furniture Brands' requests for ADP status, "disregarded this Court's rulings" in *SKF USA I* and

*PS Chez Sidney I*.  Second Supplemental Compl. ¶¶ 53-56.  Second, plaintiff claims that

Customs unlawfully ignored these two holdings in refusing to distribute CDSOA funds to

Furniture Brands.  *Id.* ¶¶ 57-59.

The Second Supplemental Complaint, filed October 8, 2008, predated the 2009 decisions

of the Court of Appeals that overturned *SKF USA I* and *PS Chez Sidney I*.  The court must now

dismiss that complaint under USCIT Rule 12(b)(5) because the complaint does not "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"[12] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 547 (2007)). *SKF USA II* held that the CDSOA is valid under the First

and Fifth Amendments to the U.S. Constitution.  556 F.3d at 1360 ("[T]he Byrd Amendment is

within the constitutional power of Congress to enact, furthers the government's substantial

interest in enforcing the trade laws, and is not overly broad."); *id.* at 1360 n.38 ("For the same

reason, the Byrd Amendment does not fail the equal protection review applicable to statutes that

disadvantage protected speech."); *id.* at 1360 ("Because it serves a substantial government

interest, the Byrd Amendment is also clearly not violative of equal protection under the rational

basis standard.").  As the facts alleged in plaintiff's complaint admit, Furniture Brands did not

indicate to the ITC, either by letter or through questionnaire response, support of the petition

seeking antidumping duties on wooden bedroom furniture from China.  Second Supplemental

Compl. ¶¶ 27, 33, 44.  Where, as here, an ITC injury determination was required and the ITC's

records permit identification of those in support of a petition, the list of interested parties "in

support of the petition with respect to which an antidumping order . . . has been entered,"

19 U.S.C. § 1675c(b)(1)(A), consists of "persons that indicate support of the petition by letter or

---

[12] Defendant Customs and defendant-intervenors moved for judgment on the pleadings under USCIT Rule 12(c), and defendant ITC moved for dismissal for failure to state a claim upon which relief can be granted under USCIT Rule 12(b)(5).  The court reviews each motion as a motion to dismiss for failure to state a claim upon which relief can be granted under USCIT Rule 12(b)(5).  Judgment on the pleadings is unavailable until the pleadings have closed, which has yet to occur as no answers to the Second Supplemental Complaint have been filed.

through questionnaire response," *id.* § 1675c(d)(1). The admitted facts demonstrate that

Furniture Brands did not satisfy the petition support requirement in the CDSOA.

Plaintiff advances several arguments why this action should not be dismissed. First,

plaintiff argues that the Court of Appeals adopted a construction of the CDSOA in *SKF USA II*

under which it was impermissible for the ITC and Customs to deny Furniture Brands CDSOA

distributions based solely on expression rather than on actions. Pl.'s Mem. in Opp'n to Defs.

U.S. Customs & Border Protection & U.S. Int'l Trade Comm'n's Mots. to Dismiss 12-18 (Jun. 6,

2011), ECF No. 102 ("Pl.'s June Opp'n") (citing *SKF USA II*, 556 F.3d at 1353). Plaintiff

asserts as a fact that it was denied CDSOA distributions based solely on expression, *i.e.*, its

informing the ITC in a questionnaire response that it opposed the wooden bedroom furniture

petition, rather than its actions, and that, in accordance with *SKF USA II*, that denial now must

be found to be contrary to the First Amendment. *Id.* at 16-17.

Plaintiff's argument misinterprets the holding of *SKF USA II*. The case does not hold

that an otherwise-eligible party may not be denied CDSOA distributions merely because the

party expressed opposition to, or failed to express support for, a petition. It holds, instead, that

the CDSOA, in imposing the petition support requirement, does *not* violate the First

Amendment. The Court of Appeals concluded that the CDSOA meets the appropriate First

Amendment legal standard, which the Court of Appeals determined to be the standard applying

to regulation of commercial speech. *SKF USA II*, 556 F.3d at 1354-55. The Court of Appeals

did state, as plaintiff highlights, that "[t]he language of the Byrd Amendment is easily

susceptible to a construction that rewards actions (litigation support) rather than the expression

of particular views" and that "a limiting construction of the statute is necessary to cabin its scope

so that it does not reward a mere abstract expression of support." *Id.* at 1353; Pl.'s June

Opp'n 13. These statements in the *SKF USA II* opinion must be read in the proper context,

which was a discussion of statutory language as an alternative to previous discussion in the

opinion on congressional purpose. These statements are part of the analysis by which the Court

of Appeals subjected the CDSOA to First Amendment standards for the regulation of

commercial speech. They do not signify a holding that the First Amendment prohibits

government agencies implementing the CDSOA from conditioning ADP status on the expression

of support for a petition. Whether or not construed as an "as applied" challenge to the petition

support requirement, plaintiff's argument must fail.[13]

Plaintiff argues, next, that this court should apply strict scrutiny to the petition support

requirement rather than the intermediate level of scrutiny applied by the Court of Appeals in

*SKF USA II.* Pl.'s June Opp'n 18-22. Attempting to distinguish this case from *SKF USA II*,

plaintiff argues that intermediate scrutiny is appropriate only for commercial speech, which,

according to plaintiff, does not describe the nature of Furniture Brands' opposition to the

wooden bedroom furniture petition. *Id.* at 18. Plaintiff alleges that Furniture Brands' "primary

reasons for opposing the petition . . . were rooted in the company's public policy judgment that,

in the long run, American industry would be harmed by the imposition of duties." *Id.* ("[U]nlike

SKF, this case concerns speech on matters of public concern, subject to strict scrutiny."). In

arguing that it has raised a valid as applied challenge, plaintiff again misinterprets *SKF USA II.*

---

[13] The court observes, without deciding for purposes of adjudicating this case, that "as applied" First Amendment challenges in the commercial speech context may be disfavored generally. *See United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430-31 (1993) ("[We] judge the validity of the restriction in this case by the relation it bears to the general problem . . . not by the extent to which it furthers the Government's interest in an individual case.").

Neither the holding nor the reasoning of the case depends on the specific motivations of plaintiff

SKF USA in opposing the petition then at issue.  Instead, the case concluded that the established

First Amendment standard for regulation of commercial speech was the correct legal test for

determining the constitutionality of the CDSOA petition support requirement.  *SKF USA II*, 556

F.3d at 1354-55.  Discussing how the CDSOA applies generally to affected parties, and not

referring specifically to the speech of SKF USA, the Court of Appeals reasoned that

"[r]ewarding parties under the circumstances here is similar to commercially contracting with

them to assist in the performance of a government function" and that "rewarding those who

support government enforcement is at least constitutional if those provisions satisfy the standards

governing commercial speech."  *Id.*

Next, plaintiff attempts to distinguish *SKF USA II* on the ground that Furniture Brands,

unlike the plaintiff in *SKF USA II*, is not foreign-owned, arguing that the petition support

requirement as applied to Furniture Brands is, in this respect, "[u]nconstitutionally [o]verbroad."

Pl.'s June Opp'n 22 (citing *Central Hudson Gas & Electric v. Public Serv. Comm'n of New

York*, 447 U.S. 557, 566 (1980)).  Alluding to language in *SKF USA II* in which the Court of

Appeals reasoned that a purpose of the CDSOA was to prevent dumping, plaintiff bases its

argument on the specific statement by the Court of Appeals that "'Congress could permissibly

conclude that it is not required to reward'" a party opposed to a petition because "'[o]pposing

parties' interests lie in defeating the petition, typically (as is the case here) because the domestic

industry participant is owned by a foreign company charged with dumping.'"  *Id.* at 23-24

(quoting *SKF USA II*, 556 F.3d at 1358).  According to plaintiff, "[t]hat rationale for

disqualifying SKF from receiving Byrd Amendment distributions cannot justify the application

of the 'support' requirement to disqualify" Furniture Brands, which plaintiff argues is not

foreign-owned. *Id.* at 24.

Plaintiff's argument that the CDSOA is unconstitutionally overbroad as applied to

Furniture Brands is misguided in attempting to draw a distinction based on the ownership of a

plaintiff challenging the CDSOA as violative of the First Amendment. The Court of Appeals

reasoned that "the purpose of the Byrd Amendment's limitation of eligible recipients was to

reward injured parties who assisted government enforcement of the antidumping laws by

initiating or supporting antidumping proceedings." *SKF USA II*, 556 F.3d at 1352. It further

reasoned that "the Byrd Amendment directly advances the government's substantial interest in

trade law enforcement by rewarding parties who assist in this enforcement," *id.* at 1355, and that

the CDSOA's effect on protected expression was not "overly broad," *id.* at 1360. The Court of

Appeals considered it permissible under the First Amendment for Congress to decline to reward

domestic parties who did not support a petition. *See id.* at 1358. The Court of Appeals did not

condition that conclusion on a circumstance in which the party declining to support the petition

is foreign-owned. For its argument, plaintiff seizes on language in *SKF USA II* that is not part of

the holding of the case. The language refers only to the *likelihood* that ownership by a

respondent in an antidumping proceeding will be the reason why a party opposes a petition. *Id.*

("Opposing parties' interests lie in defeating the petition, typically (as is the case here) because

the domestic industry participant is owned by a foreign company charged with dumping."").

Nothing in *SKF USA II* indicates that the Court of Appeals confined its holding to CDSOA First

Amendment challenges brought by foreign-owned plaintiffs. And as the court explained

previously, the holding of the case does not attach significance to the reasons why an individual

plaintiff who challenges the petition support requirement on First Amendment grounds actually opposed the petition.

Finally, plaintiff's July 8, 2011 submission draws the court's attention to the Supreme Court's recent decision in *Sorrell v. IMS Health Inc. Pl.'s Additional Authority Letter* 1 (citing *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653). According to plaintiff, "*Sorrell* holds that heightened scrutiny must be given to content-based regulations of commercial speech, and that in the ordinary course, such regulations cannot survive heightened scrutiny." *Id.* Plaintiff argues that *Sorrell* "rejects key premises of" the decision of the Court of Appeals in *SKF USA II* "so that *SKF* can no longer be considered good law." *Id.* Plaintiff argues in the alternative that "at the very least, *Sorrell* shows that the *SKF* decision must be read narrowly" such that Furniture Brands "is entitled to prevail on its First Amendment claim despite *SKF*." *Id.* The court rejects both of these arguments.

*Sorrell* struck down a Vermont statute, the "Prescription Confidentiality Law," that in its central provision, § 4631(d), prohibited, subject to certain exceptions, the sale, disclosure, and use of information obtained from pharmacy records that revealed the drug prescribing practices of individual physicians. *Sorrell*, 131 S. Ct. at 2660 (citing Vt. Stat. Ann. tit. 18, § 4631(d) (2009)). The information the statute restricted was useful to drug manufacturers in the marketing of brand-name, patented prescription drugs. *Id.* The statute, which was accompanied by a legislative finding that the marketplace for ideas on medicine safety and effectiveness is frequently one-sided in favor of brand-name drug companies, promoted the dissemination of information on generic drugs for which patents had expired. *Id.* at 2661. The Supreme Court concluded that the statute prohibited pharmacies, health insurers, and similar entities from

disclosing or using the information in question for marketing but allowed sale to, and use by,

private or academic researchers for other purposes and thereby "enacts content- and speaker-

based restrictions on the sale, disclosure, and use of prescriber-identifying information." *Id.*

at 2662-63.  Under the Supreme Court's analysis, the Vermont law "forbids sale" of the

information "subject to exceptions based in large part on the content of a purchaser's speech,"

disfavors "marketing, that is, speech with a particular content," and "disfavors specific speakers,

namely, pharmaceutical manufacturers." *Id.*  Noting that the Vermont legislature, in stating the

statutory purpose of the Prescription Confidentiality Law, had targeted for disfavored treatment

"detailers," *i.e.*, certain persons who used the prescriber-identifying information to promote

brand-name drugs on behalf of pharmaceutical manufacturers, the Supreme Court concluded that

the Vermont statute, in its practical application, "'goes even beyond mere content discrimination,

to actual viewpoint discrimination.'" *Id.* (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992)).

Because the Vermont statute "is designed to impose a specific, content-based burden on

protected expression," the Supreme Court concluded that "heightened judicial scrutiny is

warranted." *Id.* at 2664.  The Supreme Court concluded that, in light of the restrictions placed

on disfavored speech, the commercial nature of the speech was not a reason for the statute to

escape heightened scrutiny, *id.*, under which "the State must show at least that the statute

directly advances a substantial government interest and that the measure is drawn to achieve that

interest," *id.* at 2667-68.  The Court decided that the State of Vermont failed to make that

showing.  The Court reasoned that a purpose the State advanced in support of the statute,

promoting medical privacy and physician confidentiality, does not suffice where, as here, the law

allows wide dissemination of the information but prohibits its use by a narrow class of

disfavored speakers, the detailers, and for a disfavored use, marketing. *Id.* at 2668. Another

purpose the State advanced in support of the Prescription Confidentiality Law, reducing health

care costs and promoting public health, also failed to justify the burden on speech. *Id.* In

restraining certain speech by certain speakers, and specifically, in diminishing the ability of

detailers to influence prescription decisions, the statute sought to influence medical decisions by

keeping physicians from receiving the disfavored information. *Id.* at 2670. "As Vermont's

legislative findings acknowledge, the premise of § 4631(d) is that the force of speech can justify

the government's attempts to stifle it." *Id.* at 2671. Opining that Vermont was free to engage in

its own speech if it wanted to convey views to compete with those of the detailers, the Supreme

Court admonished that "[t]he State may not burden the speech of others in order to tilt public

debate in a preferred direction." *Id.*

The court disagrees with plaintiff's argument to the effect that *Sorrell* implicitly

overturns *SKF USA II*. Nothing in the Supreme Court's holding in *Sorrell* requires that

plaintiff's constitutional claims avoid dismissal under the *SKF USA II* precedent. Although

reaching opposite First Amendment outcomes, the two cases analyze dissimilar statutes, which

vary considerably in the nature and degree of the effect on expression and, most significantly,

differ in purpose. The Vermont statute at issue in *Sorrell* authorized civil remedies against those

selling or using the prescriber-identifying information, engaged in content-discrimination and, in

practical application, also discriminated by viewpoint. *Id.* at 2660. The CDSOA does not have

as a stated purpose, or even an implied purpose, the intentional suppression of expression. The

Court of Appeals expressly so concluded in its opinion. *SKF USA II*, 556 F.3d at 1351-52. Nor

does *Sorrell* require us to subject the CDSOA to a new First Amendment analysis differing from

that applied by the Court of Appeals. In *Sorrell*, the Supreme Court stated that "the State must

show at least that the statute directly advances a substantial government interest and that the

measure is drawn to achieve that interest." 131 S. Ct. at 2667-68 (citing *Board of Trustees of

State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Central Hudson*, 447 U.S. at 566). In *SKF

USA II*, the Court of Appeals, having decided that "SKF's opposition to the antidumping petition

is protected First Amendment activity," 556 F.3d at 1354, applied the same test, which it referred

to as the "well established *Central Hudson* test" and which it described as requiring that

regulation of commercial speech be held permissible if the asserted governmental interest is

substantial, the regulation directly advances that interest, and the regulation is not more

extensive than is necessary to serve that interest, *id.* at 1355 (citing *Central Hudson*, 447

U.S. at 566).

Also unconvincing is plaintiff's argument that *Sorrell* compels a narrow reading of the

holding in *SKF USA II* under which plaintiff, on the facts of this case, is entitled to prevail on its

claims. To support this argument, plaintiff points again to the fact that Furniture Brands is not

foreign-owned and to the reasons why Furniture Brands opposed the petition on wooden

bedroom furniture. *Pl.'s Additional Authority Letter* 3. Plaintiff essentially is repeating two of

the arguments that it made in support of its "as applied" challenges to the CDSOA and that the

court has rejected. Plaintiff asserts once more that it was denied Byrd Amendment distributions

because of the content of its speech and, specifically, the viewpoint it expressed when opposing

the petition. *Id.* For the reasons the court has explained, *SKF USA II* is controlling precedent in

this case, notwithstanding the alleged facts and circumstances on which plaintiff relies. *Sorrell*

does not compel a "narrow reading" of *SKF USA II* under which the court may conclude that

plaintiff's constitutional claims are not foreclosed by the *SKF USA II* holding.

### C.  Plaintiff's Motion to Amend the Complaint Is Properly Denied on the Ground of Futility

"When a party faces the possibility of being denied leave to amend on the ground of

futility, that party must demonstrate that its pleading states a claim on which relief could be

granted, and it must proffer sufficient facts supporting the amended pleading that the claim could

survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro

S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006).  The proposed new claims must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff seeks to add two new claims (Counts 3 and 4) to this action.  Third Amended

Compl. ¶¶ 60-67.  Because neither Count 3 nor Count 4 makes out a plausible claim for relief

under the set of facts alleged in the proposed Third Amended Complaint, adding these new

claims would be futile.  The court, therefore, will deny plaintiff's motion to amend.

In Count 3, plaintiff would claim that the government's denials of ADP status were

contrary to the CDSOA as construed by the Court of Appeals in *SKF USA II* and therefore "not

in accordance with law, in violation of 5 U.S.C. § 706." *Id.* ¶¶ 62-63.  Plaintiff argues that the

Court of Appeals in *SKF USA II* "adopted a construction of the CDSOA intended to avoid the

First Amendment infirmities that would result from conditioning eligibility for a CDSOA

distribution on a party's expression." *Id.* ¶ 61.  According to Count 3, under this construction

"Furniture Brands should be regarded as having 'supported the petition' because of the

voluminous information it provided to the ITC to assist in the ITC's determination whether the

dumping of Chinese goods caused material injury to domestic injury." *Id.* ¶ 62. The providing

of information to the ITC during the wooden bedroom furniture investigation, as plaintiff alleges

in Count 3 to have occurred, would not satisfy the petition support requirement in the CDSOA.

Therefore, even if the new factual allegations were added to the complaint, Furniture Brands,

which expressed its opposition, rather than its support, to the ITC for the wooden bedroom

furniture petition, would still not satisfy the petition support requirement. *See* 19 U.S.C.

§ 1675c(b)(1), (d)(1). *SKF USA II* did not construe the CDSOA to require or permit a party who

provided the ITC information but who failed to indicate support for (and indeed opposed) the

relevant petition to qualify as an ADP.

In Count 4, plaintiff seeks leave to claim that defendants' determinations that plaintiff

was ineligible for CDSOA distributions were "arbitrar[y] and capricious[], in violation of

5 U.S.C. § 706" because "the administrative record makes clear that [defendants] relied solely on

Plaintiff's expression of opposition and did not consider any evidence relating to Plaintiff's

actions." Third Amended Compl. ¶¶ 64-67. Under the CDSOA, defendants lacked discretion to

grant Furniture Brands ADP status because Furniture Brands, according to the facts plaintiff

admits, did not satisfy the petition support requirement. For the reasons we discussed previously

in this Opinion, the alleged fact that defendants relied solely on the expression of opposition in

denying plaintiff ADP status, if presumed to be true, could not alter our conclusion. Rather than

construe the CDSOA to prohibit a denial of ADP status on an administrative record such as that

which plaintiff alleges in Count 4 to exist in this case, *SKF USA II* upheld the petition support

requirement as valid under the First and Fifth Amendments to the Constitution.

## IV. CONCLUSION

The Second Supplemental Complaint must be dismissed for failure to state a claim upon which relief can be granted.  The court will deny as futile plaintiff's motion to amend the complaint.  Judgment dismissing this action will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: October 20, 2011
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FURNITURE BRANDS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION, <br><br> Defendants, <br><br> and <br><br> AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC., <br><br> Defendant-Intervenors. | Before:   Gregory W. Carman, Judge <br> Timothy C. Stanceu, Judge <br> Leo M. Gordon, Judge <br><br> Court No. 07-00026 |

## JUDGMENT

Upon consideration of the complaint, the motions for judgment on the pleadings filed by defendant U.S. Customs and Border Protection and the defendant-intervenors, which the court reviews as motions to dismiss for failure to state a claim upon which relief can be granted, the motion to dismiss for failure to state a claim upon which relief can be granted filed by defendant U.S. International Trade Commission, plaintiff's motion to dismiss for lack of subject matter jurisdiction or for leave to amend the complaint, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that plaintiff's motion to dismiss for lack of subject matter jurisdiction or for leave to amend the complaint be, and hereby is, DENIED; it is further

**ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, GRANTED; and it is further

**ORDERED** that this action be, and hereby is, DISMISSED.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: October 20, 2011
New York, New York