Slip Op. 12- 2 0

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FURNITURE BRANDS INTERNATIONAL, INC., | |
| Plaintiff, | |
| v. | |
| UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION, | Before:  Gregory W. Carman, Judge<br>Timothy C. Stanceu, Judge<br>Leo M. Gordon, Judge |
| Defendants, | |
| and | Court No. 07-00026 |
| AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Denying plaintiff's motion for an injunction pending appeal to prevent distribution of withheld funds]

Dated: February 17, 2012

*David W. DeBruin* and *Matthew E. Price*, Jenner & Block LLP, of Washington, DC, for plaintiff.

*Jessica R. Toplin*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief was *Andrew G. Jones*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission. With him were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

*Joseph W. Dorn*, *Jeffrey M. Telep*, and *Taryn K. Williams*, King & Spalding LLP, of Washington, DC, for defendant-intervenors.

Stanceu, Judge: This litigation concerns administrative decisions by two agencies, the

U.S. International Trade Commission ("ITC" or the "Commission") and U.S. Customs and

Border Protection ("Customs"), that denied plaintiff Furniture Brands International, Inc.

("Furniture Brands") distributions of funds available under the Continued Dumping and Subsidy

Offset Act of 2000 ("CDSOA"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75,

19 U.S.C. § 1675c (2000),[1] *repealed by* Deficit Reduction Act of 2005, Pub. L. 109-171,

§ 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007). The ITC did not include

Furniture Brands on a list of parties potentially eligible for "affected domestic producer"

("ADP") status under the CDSOA, which status could have qualified Furniture Brands for

distributions of antidumping duties collected under an antidumping duty order on imports of

wooden bedroom furniture from the People's Republic of China ("China"). Second

Supplemental Compl. ¶ 31 (deemed filed Oct. 8, 2008), ECF No. 46; *Notice of Amended Final*

*Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Wooden Bedroom*

*Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4, 2005) ("*Antidumping*

*Duty Order*"). Based on the ITC's decision, Customs declined to provide Furniture Brands

annual CDSOA distributions for Fiscal Years 2006 through 2008.

---

[1] Citations are to the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000). All other citations to the United States Code are to the 2006 edition.

Plaintiff brought this action in 2007, raising constitutional (First Amendment and Fifth Amendment equal protection) challenges to the agency actions and the CDSOA. Compl. (Jan. 23, 2007), ECF No. 4. Plaintiff was opposed in this action by defendant-intervenors American Furniture Manufacturers Committee for Legal Trade, a coalition of domestic wooden bedroom furniture producers that were eligible to receive CDSOA distributions, and Vaughan-Bassett Furniture Company, Inc., a domestic wooden bedroom furniture producer eligible to receive CDSOA distributions. Mot. for Joinder & Intervention 2-3 (Mar. 16, 2006), ECF No. 11. In *Furniture Brands International, Inc. v. United States*, 35 CIT __, 807 F. Supp. 2d 1301 (2011), the court entered judgment dismissing plaintiff's action, concluding, first, that plaintiff's complaint failed to state a claim upon which relief could be granted and, second, that plaintiff's attempt to amend the complaint to add additional claims would be futile.

Plaintiff now moves for an injunction pending appeal under USCIT Rule 62(c), attempting to prevent distribution of "any funds pursuant to the [CDSOA] that are currently being withheld by Customs for Furniture Brands" until the conclusion of "all appeals, petitions for certiorari, and remands." Pl.'s Mot. for Inj. Pending Appeal 1-2 (Jan. 18, 2012), ECF No. 117 ("Pl.'s Mot."); Pl.'s Mem. of Points & Authorities in Supp. of its Mot. for Inj. Pending Appeal (Jan. 18, 2012), ECF No. 117 ("Pl.'s Mem."). The court denies plaintiff's motion.

## I. BACKGROUND

In 2005, Commerce issued an antidumping duty order on imports of wooden bedroom furniture from China. *Antidumping Duty Order*. During proceedings before the ITC to determine whether such imports were causing or threatening to cause material injury to the domestic industry, Furniture Brands responded to the ITC's questionnaires, opposing the

issuance of an antidumping duty order. *Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d

at 1304.  Furniture Brands did not appear as a potential ADP with respect to the antidumping

duty order on the list published by Customs for fiscal years 2006, 2007, or 2008.  *Distribution of*

*Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336,

31,375-76 (June 1, 2006); *Distribution of Continued Dumping & Subsidy Offset to Affected*

*Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23 (May 29, 2007); *Distribution of Continued*

*Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,236-37

(May 30, 2008).

      In this litigation, plaintiff challenged the ITC's decision not to include Furniture Brands

on the list of parties potentially eligible for ADP status and the failure by Customs to distribute

CDSOA funds to Furniture Brands, arguing that these actions violated freedom of expression

guarantees of the First Amendment to the U.S. Constitution, the equal protection guarantee of

the Fifth Amendment, and the CDSOA.  *Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d

at 1306-07.  Plaintiff also requested an order dismissing its own action for lack of subject matter

jurisdiction and moved for leave to amend the complaint to add claims that the ITC and Customs

had violated the Administrative Procedure Act in denying Furniture Brands CDSOA

distributions.  *Id.* at __, 807 F. Supp. 2d at 1303-04.  As relief, plaintiff sought an order that the

ITC include Furniture Brands on the list of potential ADPs and that Customs distribute to

Furniture Brands the withheld funds.  Second Supplemental Compl. Prayer for Relief.

      On October 20, 2011, the court dismissed plaintiff's action upon motions to dismiss filed

by defendant and defendant-intervenors. *Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d

at 1316.  The court concluded, first, that this action was within its subject matter jurisdiction

under section 201 of the Customs Courts Act of 1980 ("Customs Courts Act"), 28 U.S.C.

§ 1581(i)(4), as a "civil action commenced against the United States that arises out of a law of

the United States . . . 'providing for . . . administration . . . with respect to' antidumping and

countervailing duties." *Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d at 1308.  The court

then concluded that plaintiff's constitutional claims were foreclosed by precedent of the U.S.

Court of Appeals for the Federal Circuit ("Court of Appeals"), which, in rejecting analogous

First and Fifth Amendment claims, held that "the CDSOA is valid under the First and Fifth

Amendments to the U.S. Constitution." *Id.* at __, 807 F. Supp. 2d at 1310 (citing *SKF USA, Inc.*

*v. United States*, 556 F.3d 1337 (Fed. Cir. 2009) ("*SKF*")).  Finally, the court denied plaintiff's

motion for leave to amend the complaint because the two claims Furniture Brands sought to add

would have been futile, as neither claim "makes out a plausible claim for relief under the set of

facts alleged in the proposed Third Amended Complaint . . . ."  *Id.* at __, 807 F. Supp. 2d

at 1316.

On November 4, 2011, Furniture Brands appealed the court's judgment dismissing this

action.  Notice of Appeal (Nov. 4, 2011), ECF No. 114.  On January 5, 2012, the court conferred

with the parties to this case, as well as other parties to other cases involving the CDSOA, during

which conference Customs informed the court that it did not intend to delay processing of

CDSOA distributions past a date to which it had agreed previously, January 31, 2012.  Pl.'s

Mem. 5; Def. U.S. Customs & Border Protection's Resp. to the Ct.'s Feb. 14, 2011 Request

(Feb. 28, 2011), ECF No. 75.  According to subsequent e-mail communications between counsel

for plaintiff and Customs, no distributions will be made until March 9, 2012.  Pl.'s Mem.

attachment B.  Plaintiff filed the instant motion on January 18, 2012.  Pl.'s Mot.  On

February 10, 2012, defendant Customs and defendant-intervenors filed their responses in

opposition.  Defs. United States' & U.S. Customs & Border Protection's Opp'n to Pl.'s Mot. for

an Inj. Pending Appeal (Feb. 10, 2012), ECF No. 122; Def.-Intervenors' Resp. to Pl.'s Mot. for

an Inj. Pending Appeal (Feb. 10, 2012), ECF No. 123.  Defendant ITC did not respond.

## II. DISCUSSION

Furniture Brands seeks to enjoin Customs and the ITC from making any CDSOA

distributions "that are currently being withheld by Customs for Furniture Brands" and that would

"remain in place for the pendency of this litigation, including all appeals, petitions for certiorari,

and remands." Pl.'s Mem. 2.[2]  The court concludes that USCIT Rule 62(c) governs the issue

presented by plaintiff's motion, in providing that "[w]hile an appeal is pending from an

interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court

may suspend, modify, restore, or grant an injunction . . . ." USCIT R. 62(c).  Although the

court's judgment in *Furniture Brands International* did not grant, dissolve, or deny an injunction

expressly, the judgment implicitly denied plaintiff's request for affirmative injunctive relief in

the form of an order under which the ITC would add Furniture Brands to the list of potential

---

[2] Furniture Brands International, Inc. seeks
[An] injunction enjoining the Defendants, the United States, United States Customs
and Border Protection ('Customs'), and United States International Trade
Commission ('USITC'), together with their agents, officers, delegates, and
employees, from disbursing, ordering the disbursement of, or causing the
disbursement of any funds pursuant to the Continued Dumping and Subsidy Offset
Act of 2000 ('CDSOA'), that are currently being withheld by Customs for Furniture
Brands.  Furniture Brands further requests that such injunction remain in place for
the pendency of this litigation, including all appeals, petitions for certiorari, and
remands.
Pl.'s Mem. of Points & Authorities in Supp. of its Mot. for Inj. Pending Appeal 1-2 (Jan. 18,
2012), ECF No. 117 (internal citation omitted).

recipients of CDSOA distributions and Customs would distribute to Furniture Brands the

CDSOA funds plaintiff claims it is owed.  Second Supplemental Compl. Prayer for Relief.

Our first consideration is the standard to be applied to plaintiff's motion.  With respect to

the standard governing a stay pending appeal, the U.S. Supreme Court in 2009 instructed that a

court is to consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed
> on the merits; (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties interested
> in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776

(1987)).  The Court instructed that "[t]he first two factors of the traditional standard are the most

critical," *id.*, and that "[it] is not enough that the chance of success on the merits be better than

negligible," *id.* (internal quotations omitted).

What plaintiff requests is not a stay, which would merely "operat[e] upon the judicial

proceeding itself," but instead is an injunction that is "directed at someone, and governs that

party's conduct."  *See Nken*, 129 S. Ct. at 1757-58.  We conclude that to obtain the injunction it

seeks, plaintiff must satisfy a test at least as stringent as the test prescribed in *Nken*.  We find

instructive as guidance several statements of the Supreme Court, made in the context of the

Supreme Court's exercise of its powers under the All-Writs Act, that injunctions pending appeal

demand a "significantly higher justification" than do stays, *Ohio Citizens For Responsible*

*Energy, Inc. v. NRC*, 479 U.S. 1312, 1312 (1986) (Scalia, J., in chambers), at least where, as

here, the injunction is "against the enforcement of a presumptively valid Act of Congress,"

*Turner Broadcasting System, Inc. v. F.C.C.*, 507 U.S. 1301, 1301 (1993) (Rehnquist, C.J., in

chambers).  *See Respect Maine PAC v. McKee*, 131 S. Ct. 445 (2010) (Mem.) (noting that the

standard for injunctive relief pending appeal is more demanding than the standard for a stay of a

judgment).

   The court determines that plaintiff's motion does not satisfy even the test stated in *Nken*.

Although the court presumes the irreparably injury factor to be satisfied, plaintiff has not shown

that it is likely to succeed on appeal.  Moreover, plaintiff is unable to show that our granting the

injunction will not prejudice defendant-intervenors, whose receipt of the withheld funds would

be further delayed through the progress of plaintiff's appeal.  And it is not readily apparent that

the public interest, which is served by the orderly and proper administration of the CDSOA,

would be advanced by the injunction being sought.

   A.  Plaintiff Has Not Shown a Likelihood of Succeeding on the Merits of Its Appeal

   For likelihood of success on appeal, plaintiff relies on three arguments that we considered

and rejected in *Furniture Brands International*.  Plaintiff does not cite an intervening change in

the governing law, nor does it present a new argument for why we now should conclude that

*Furniture Brands International* was incorrectly decided.

   Plaintiff's first argument is that this Court lacks subject matter jurisdiction over this

action.  According to plaintiff, an injunction pending appeal is appropriate because there is a

"substantial and novel question concerning whether this Court properly exercised subject matter

jurisdiction over this case."  Pl.'s Mem. 12.  Section 201 of the Customs Courts Act grants this

Court jurisdiction "of any civil action commenced against the United States . . . that arises out of

any law of the United States providing for . . . administration and enforcement with respect to,"

*inter alia*, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons

other than the raising of revenue . . . ."  28 U.S.C. § 1581(i)(2), (4).  Plaintiff argues that its case

does not arise out of the CDSOA as a whole but rather from particular subsections of the

CDSOA defining the petition support requirement, 19 U.S.C. § 1675c(b)(1), (d)(1), & (d)(3).

Pl.'s Mem. 12-15.  In support of this argument, plaintiff cites *Orleans International, Inc. v.*

*United States*, 334 F.3d 1375 (Fed. Cir. 2003), which it views as holding that "the relevant 'law'

out of which a civil action arises, for purposes of 28 U.S.C. § 1581(i)(4), is the particular

subsection giving rise to the civil action." Pl.'s Mem. 12.  Plaintiff maintains that these

subsections "do not involve the administration of *duties*; they merely establish a scheme to

distribute money to a class of beneficiaries selected by Congress." *Id.* at 13.  Plaintiff perceives

in the meaning of the word "law," as used in 28 U.S.C. § 1581(i), a "substantial question as to

whether this action falls outside this Court's carefully delimited jurisdiction." *Id.* at 14.

    In *Furniture Brands International*, we rejected the argument that plaintiff's case, for

purposes of subject matter jurisdiction, arises out of the CDSOA subsections defining the

petition support requirement. 35 CIT at ___, 807 F. Supp. 2d at 1308 n.9.  We reasoned that the

"petition support requirement provision is integral in structure and purpose with the other

provisions of the CDSOA, the provisions of which collectively constitute a 'law' within the

meaning of 28 U.S.C. § 1581(i)." *Id.* at ___, 807 F. Supp. 2d at 1308 n.9.  Concluding that the

CDSOA is a law providing for administration of antidumping and countervailing duties within

the meaning of § 1581(i)(2) and (4), we held that plaintiff's claims were within the court's

subject matter jurisdiction. *Id.* at ___, 807 F. Supp. 2d at 1307-1310.

    Plaintiff again relies on *Orleans International* for its argument that there is a lack of

subject matter jurisdiction. Pl.'s Mem. 12.  In that case, the Court of Appeals reversed a

judgment of this Court dismissing, for lack of subject matter jurisdiction, an action that arose

from import duties assessed pursuant to the Beef Promotion and Research Act of 1985, which

funded a "program of promotion and research" in support of the beef industry through fees

assessed both on domestic purchases and on import transactions of cattle, beef, and beef

products. *Orleans Int'l*, 334 F.3d at 1377. The Court of Appeals concluded that, because the

Beef Promotion and Research Act imposed a duty on imports for reasons other than the raising

of revenue, an action arising from import duties assessed under the statute "fits squarely within

the language of [28 U.S.C.] § 1581(i)(2)," even though the statute expressly granted to the

district courts jurisdiction over certain types of actions arising thereunder. *Id.* at 1379. The

Court of Appeals stated that it found "no requirement in the law that a statute (as opposed to a

specific cause of action) must be entirely involved with international trade for the Court of

International Trade to have jurisdiction over any action brought under that statute." *Id.* In

crafting its argument on jurisdiction, plaintiff reads too much into this statement. *Orleans*

*International* did not hold that the term "law," as used in 28 U.S.C. § 1581(i), always must be

construed to refer to an individual provision within a statute. In this case, such a construction is

unsound because the various provisions of the CDSOA operate together to create a program for

"the depositing, maintaining, allocating, and distributing of antidumping and countervailing

duties." *Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d at 1308. Plaintiff's claims and

the remedy sought, the distribution to plaintiff of the withheld funds, arise from that program.

*Id.* at __, 807 F. Supp. 2d at 1308 & 1308 n.9. As we concluded in *Furniture Brands*

*International*, the CDSOA is a statute providing for administration of antidumping duties within

the meaning of 28 U.S.C. § 1581(i)(2) and (i)(4), and, therefore, jurisdiction was properly

exercised over this case.

Plaintiff argues, second, that "the facts in its case are materially different than the facts in *SKF*, requiring a different result." Pl.'s Mem. 15. Plaintiff asserts as factual differences that, unlike the plaintiffs in *SKF*, "Furniture Brands is not foreign owned and does not own any Chinese exporters of wooden bedroom furniture" and that it "opposed the imposition of duties because . . . it believed that trade barriers . . . ultimately would do more harm than good to domestic industry." *Id.* at 16-17. Furniture Brands views these facts as material, on the premise that the Court of Appeals "expressly recognized" the *SKF* plaintiffs as a "'domestic industry participant . . . owned by a foreign company charged with dumping . . . .'" *Id.* at 15 (quoting *SKF*, 556 F.3d at 1358) (emphasis omitted). According to Furniture Brands, it was only in that factual context that the Court of Appeals "viewed the indication of opposition in response to the ITC's questionnaire as action taken by an 'opposing party' rather than as an expression of viewpoint." *Id.* Furniture Brands argues that *SKF* was thus limited to circumstances in which the opposition can be construed as action, which it alleges not to be the case here. *Id.*

We rejected plaintiff's argument in *Furniture Brands International*, concluding that "[t]he Court of Appeals considered it permissible under the First Amendment for Congress to decline to reward domestic parties who did not support a petition" and that "[t]he Court of Appeals did not condition that conclusion on a circumstance in which the party declining to support the petition is foreign-owned." 35 CIT at __, 807 F. Supp. 2d at 1313. As we pointed out, the language in *SKF* to which plaintiff directed our attention refers only to the likelihood that a domestic producer opposing a petition does so because of ownership by a respondent in an antidumping proceeding. *Id.* at __, 807 F. Supp. 2d at 1313. In reaching its holding in *SKF*, the

Court of Appeals did not attach controlling significance to the reason why a domestic producer opposes a petition.

Plaintiff argues, third, that it has met its burden of showing likelihood of success on appeal because "the intervening Supreme Court decision in *Sorrell* presents a substantial question concerning whether *SKF* must be revisited altogether." Pl.'s Mem. 15 (citing *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011)). According to Furniture Brands, *Sorrell* held that a law imposing a "'content-based burden on protected expression'" must be subjected to "'heightened judicial scrutiny,'" and that "'[c]ommercial speech is no exception.'" *Id.* at 19 (quoting *Sorrell*, 131 S. Ct. at 2664). Furniture Brands argues that the Court of Appeals in *SKF* incorrectly "applied intermediate scrutiny because it regarded the CDSOA as akin to a regulation of commercial speech." *Id.* Alternatively, plaintiff construes *Sorrell* to compel a narrow reading of *SKF* under which the court should distinguish between "mere commercial speech and speech on matters of public concern like Furniture Brands,' which is entitled to greater protection and stricter judicial scrutiny." *Id.*

In *Furniture Brands International*, we rejected the argument that *Sorrell* implicitly overturned *SKF*. 35 CIT at __, 807 F. Supp. 2d at 1314-15. We also rejected the argument that *Sorrell* requires a narrow reading of *SKF* under which the court may conclude that plaintiff's constitutional claims are not foreclosed by the *SKF* precedent. *Id.* at __, 807 F. Supp. 2d at 1315. We reject those same arguments again, for the reasons we stated in *Furniture Brands International*. In brief summary, the Vermont statute struck down in *Sorrell* authorized civil penalties against certain persons selling or using a type of information ("prescriber-identifying information") that the statute sought to suppress, while the CDSOA does not have as a stated or

implied purpose the intentional suppression of expression. *Id.* at __, 807 F. Supp. 2d at 1314-16.

Moreover, the Supreme Court in *Sorrell* concluded that the Vermont statute could not survive

First Amendment scrutiny under the same standard that the Court of Appeals applied to the

CDSOA in *SKF*. *Id.* at __, 807 F. Supp. 2d at 1315. *Sorrell* is not properly construed to reach a

holding requiring us to subject the CDSOA to a different standard than that applied by the Court

of Appeals.

     Recognizing that the court already has rejected its arguments grounded in *SKF* and

*Sorrell*, plaintiff argues that it need not make a strong showing that it is likely to succeed on the

merits and that it "can meet its burden to show a likelihood of success on the merits merely by

raising questions that are 'serious, substantial, difficult, and doubtful.'" Pl.'s Mem. 11 (quoting

*SKF USA, Inc. v. United States*, 28 CIT 170, 176, 316 F. Supp. 2d 1322, 1329 (2004)). Plaintiff

argues that it has met this burden because its arguments "resulted in a 27-page opinion by this

Court addressing several matters of first impression." *Id.* at 11; *id.* at 7 (arguing that plaintiff

had "raised 'serious, substantial, difficult and doubtful questions, as shown by this Court's 27-

page opinion . . .") (internal citation omitted); Pl.'s Mot. 3 (same).

     The court rejects the argument plaintiff puts forth as to why it has satisfied the likelihood

of success factor, for two reasons. First, the page length of the opinion from which an appeal is

pending is insufficient to show that the underlying issues were serious, substantial, difficult, or

doubtful. Second, plaintiff's permissive view of the likelihood of success factor does not square

with the Supreme Court's statements in *Nken* that an applicant must have "made a strong

showing that he is likely to succeed on the merits" and that "[it] is not enough that the chance of

success on the merits be 'better than negligible.'" 129 S. Ct. at 1761. Plaintiff cites various

judicial decisions in support of its view, but these cases are inapplicable because they refer to the

likelihood of success factor in other contexts, such as applied to preliminary injunctions, rather

than as applied to post-judgment relief pending appeal. *See id.* (stating in *dicta* that the test for

granting a preliminary injunction differs from the test for granting post-judgment relief).

According to an appellate court that has considered this question, the burden is greater when a

party seeks post-judgment relief than when a party seeks a preliminary injunction because the

court already has considered the merits. *Michigan Coalition of Radioactive Material Users, Inc.*

*v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("[A] movant seeking a stay pending review

on the merits of a district court's judgment will have greater difficulty in demonstrating a

likelihood of success on the merits.  In essence, a party seeking a stay must ordinarily

demonstrate to a reviewing court that there is a likelihood of reversal.").

 For the foregoing reasons, the court concludes that plaintiff has not shown that upon

appeal it is likely to succeed on the merits of its claims.

B.  Plaintiff Has Shown a Probability That It Would Be Irreparably Injured Absent an Injunction

 Furniture Brands argues that denial of an injunction pending appeal would cause it

irreparable harm in three ways.  First, plaintiff states that, because its claims involve First

Amendment rights, any unlawful loss of those rights should be presumed to be irreparable injury.

Pl.'s Mem. 8.  Second, plaintiff argues that the court's denying injunctive relief would lead to

distribution of the CDSOA funds reserved for Furniture Brands, which would leave Furniture

Brands without "an adequate remedy in the event that it prevails on its appeal and on remand."

*Id.* at 9.  Plaintiff argues that the regulation pertaining to recovery of overpayment of CDSOA

funds, 19 C.F.R. § 159.64(b)(3) (2011), would not allow Customs to recover the entirety of the

amounts that might be found owing to Furniture Brands, should Furniture Brands succeed on

appeal, because of the "real possibility of bankruptcies among some of the affected domestic

producers . . . ." Pl.'s Mem. 9.  Plaintiff also argues that "[e]ven those companies that are not on

the verge of bankruptcy may have difficulty promptly repaying CDSOA funds" because "one

cannot assume that the companies receiving the funds will leave them untouched until Furniture

Brands' action is resolved." *Id.* at 10.

The court is willing to presume, based on the circumstances plaintiff identifies, that a

distribution of CDSOA funds to furniture producers currently designated as ADPs is likely to

prevent Furniture Brands from receiving the funds to which it claims entitlement.  The

distribution would render uncertain the prospects of plaintiff's ever receiving those funds in the

entirety.  Even though irreparable harm may not be a certainty, the court presumes, for purposes

of ruling on plaintiff's motion, the irreparable harm requirement to be satisfied by plaintiff's

motion for an injunction pending appeal.

C.  Plaintiff Has Not Shown that Issuance of an Injunction Would Not Substantially Injure the
Other Parties Interested in the Proceeding

Plaintiff argues that "the balance of hardships also weighs strongly in favor of Furniture

Brands" because Customs' continued withholding of CDSOA distributions would not injure

Customs and the ITC and that any harm caused to defendant-intervenors by additional delay in

receiving the CDSOA distribution would be insubstantial, as evidenced by the fact that

"[d]efendant-intervenors have never filed any action to compel the distribution of funds . . . ."

Pl.'s Mem. 20.  Plaintiff also argues that continued delay would cause defendant-intervenors no

harm if Furniture Brands succeeds on its claims and is ultimately determined to be eligible for

CDSOA distributions. *Id.*

The court disagrees that defendant-intervenors would not be substantially injured by the court's granting the requested injunction.  As plaintiff admits, these funds have been withheld for more than five years.  *Id.*  The court is not in a position to presume that further delay, even if only during appellate review, would cause nothing more than insubstantial harm to defendant-intervenors.  The court views as unduly speculative plaintiff's argument that the court should presume a lack of harm to defendant-intervenors based on the lack of attempts to force distributions prior to the conclusion of this litigation.  Regarding plaintiff's remaining argument, that no parties would be injured by our granting the injunction if Furniture Brands were determined to be eligible for these funds, that outcome is unlikely for the reasons we have discussed.  *See Furniture Brands Int'l*, 35 CIT at __, 807 F. Supp. 2d at 1316.

D.  Plaintiff Has Not Shown that the Public Interest Lies in the Court's Granting an Injunction

Plaintiff argues that enjoining CDSOA distributions pending appeal would serve the public interest by "avoiding the needless complication and expense that would result from recouping funds that are prematurely distributed" and by "ensuring that the government comply with constitutional dictates."  Pl.'s Mem. 21-22.  Plaintiff also argues that an injunction would be consistent with the CDSOA's purpose, which plaintiff describes as providing "a competitive remedy to domestic producers adversely affected by dumping."  *Id.* at 22.  According to Furniture Brands, the injunction would further the purpose of the CDSOA because if funds were distributed it would place "Furniture Brands at a competitive disadvantage and compound the conditions of unfair trade that have harmed Furniture Brands as much as any other domestic producer."  *Id.*

We are not persuaded that the injunction plaintiff desires would serve the public interest. To the contrary, the public at large is best served by a lawful and orderly resolution of the issue posed by the continuing withholding of the funds. Continued delay in the distribution of the funds to those who are entitled to them by law is inimical to the public interest.

### III. CONCLUSION AND ORDER

For purposes of ruling on Plaintiff's Motion for Injunction Pending Appeal, as filed on January 18, 2012, ECF No. 117 ("Plaintiff's Motion"), the court presumes that plaintiff has satisfied the irreparable harm factor. That factor, standing alone, is insufficient to justify the injunction plaintiff seeks, particularly where, as here, there has been no showing of likelihood of success on the merits of plaintiff's claims during the appellate process. Plaintiff has not satisfied the remaining two factors relevant to a determination on Plaintiff's Motion.

Upon consideration of Plaintiff's Motion, the accompanying memorandum of law, and all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Plaintiff's Motion be, and hereby is, DENIED.

Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: February 17, 2012
       New York, New York